PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| GREGORIO MACEDO, | ) | CASE NO. 4:11CV00175 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| WILLIAM ZEYER, *etc., et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 10, 16, 23, and 28] |

This action is before the Court upon Defendant William Zeyer's Motion to Dismiss (ECF No. 10), Defendant Nilsa Diaz's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 16), *pro se* Plaintiff Gregorio Macedo's Motion for Summary Judgment (ECF No. 23), and Defendant Zeyer's Motion to Strike Plaintiff's Traverse (ECF No. 28). The Court has reviewed the parties' briefs and the applicable law. For the reasons provided below, the Court grants Defendant William Zeyer's Motion to Dismiss, grants Defendant Nilsa Diaz's Motion to Dismiss, denies *pro se* Plaintiff Gregorio Macedo's Motion for Summary Judgment, and denies Defendant Zeyer's Motion to Strike Plaintiff's Traverse.

## I. Background

Gregorio Macedo is an inmate at Northeast Ohio Correctional Center ("NEOCC"), a private correctional facility operated by Corrections Corporation of America ("CCA") under contract with the Bureau of Prisons ("BOP"). ECF No. 10 at 2. Since at least August 4, 2010, Macedo has taken issue with the manner in which NEOCC has provided its Kosher Religious Dietary Program ("RDP"). ECF No. 1 at 2. After exhausting his administrative remedies,

(4:11CV00175)

Macedo filed this *Bivens*[1] action against NEOCC Warden Roddie Rushing, NEOCC Chaplain William Zeyer, NEOCC Food Service Administrator Nilsa Diaz, NEOCC Grievance Officer Jillian Shane, and NEOCC dietician Heidi Mayer.[2]  ECF No. 1.  In the Complaint, Plaintiff alleges that a number of problems with NEOCC's Kosher RDP and an insufficient amount of Kosher grape juice during *Shabbat* services have burdened his religious rights.  ECF No. 1 at 1-8.  Specifically, Plaintiff alleges that entrees have not been properly certified as Kosher and are opened before being heated; food is being served without proper religious supervision; non-Kosher food is being labeled as Kosher; and other inmates cook in the Kosher kitchen in violation of BOP rules.  ECF No. 1 at 4-5.  He seeks injunctive relief to remedy the alleged wrongs, or a transfer to a facility that can properly accommodate his religious needs.  ECF No. 1 at 9-10.  As a result of initial screening, the Court dismissed Plaintiff's claims with respect to Defendants Rushing and Shane pursuant to 28 U.S.C. § 1915(e).  ECF No. 6.

Defendant Zeyer filed a motion to dismiss (ECF No. 10), alleging that Macedo has failed to state a free exercise claim against Zeyer.  Specifically, Zeyer denies any involvement in the preparation of Kosher food at NEOCC and argues that the use of a communal cup for Kosher grape juice during *Shabbat* services is not a substantial burden upon Macedo's religious exercise.

---

[1] *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).  While Plaintiff cites 42 U.S.C. § 1983, there is no allegation of action under color of state law.  Plaintiff Macedo is a federal prisoner, in the custody of the BOP.  *Bivens* provides federal inmates and detainees with a cause of action analogous to § 1983.

[2] Service has not been perfected upon Mayer.  On September 30, 2011, the Clerk filed a Return of Service Unexecuted which served as notice to Macedo that service was not obtained on Mayer.  ECF No. 22.  The Clerk, however, did not receive further written instructions from Macedo regarding service upon Mayer.

2

(4:11CV00175)

Defendant Diaz has also moved to dismiss claims against her or, in the alternative, for summary judgment. ECF No. 16. Diaz advances a number of theories for why dismissal or summary judgment is warranted, including that Macedo's request for injunctive relief is moot (ECF No. 17 at 12), that *Bivens* does not provide a cause of action against Diaz, (ECF No. 17 at 14), and that Plaintiff does not state a cognizable claim because his right to religious exercise was not substantially burdened (ECF No. 17 at 23). Plaintiff responded to both dispositive motions and moved for summary judgment (ECF No. 23); both defendants responded (ECF Nos. 25 and 26). In response to Zeyer's Reply (ECF No. 24), Plaintiff filed a Traverse (ECF No. 27); Zeyer has moved to strike Plaintiff's Traverse (ECF No. 28). These matters are ripe for consideration.

## II. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff.[3] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the

---

[3] When a complaint is challenged under Fed. R. Civ. P. 12(b)(6), its allegations should be construed favorably to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), and its factual allegations, "construed so as to do justice," Fed. R. Civ. P. 8(e), must be accepted as true. *See United States v. Gaubert*, 499 U.S. 315, 327 (1991). The sufficiency of a complaint, however, is a question of law, *Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir. 1987), and the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted).

3

(4:11CV00175)

framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."[4] Twombly, 550 U.S. at 555 (citing authorities).

In other words, claims set forth in a complaint must be plausible, rather than conceivable. Twombly, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

### III. Analysis

#### A. Macedo's Food Claims

Macedo has alleged that Diaz and Zeyer, through their involvement with the improper preparation of Kosher meals at NEOCC, have violated his right to religious exercise. ECF No. 1 at 9. Before reaching the merits of Plaintiff's claim, the Court must first determine whether review of this issue is within its powers of judicial review.

"Article III of the U.S. Constitution dictates that this court must have a justiciable case or controversy before it in order to address the issues presented." Sw. Williamson County Cmty.

---

[4] "Although this is a liberal pleading standard, it requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." First Am. Title Co. v. Devaugh, 480 F.3d 438, 444 (6th Cir. 2007) (quoting S.E. Texas Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 671-72 (6th Cir. 2006)).

4

(4:11CV00175)

*Ass'n, Inc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001). *See also McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) ("Under Article III of the Constitution, our jurisdiction extends only to actual cases and controversies. We have no power to adjudicate disputes which are moot."). "'The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties.'" *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003) (quoting *McPherson*, 119 F.3d at 458).  In doing so, a reviewing court will determine, not whether the complained-of activity has ceased, but whether it can be properly remedied by the court: "[A] case is moot only where no effective relief for the alleged violation can be given." *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004).

 Here, injunctive relief would not remedy the conduct Plaintiff has complained about because Plaintiff has already received the relief he sought.  In his Complaint, Plaintiff only asks for Kosher RDP meals to be in compliance with BOP standards; he has not asked for monetary damages.  ECF No. 1 at 9.  On July 1, 2011, CCA, pursuant to a modified contract with the BOP, adopted a Kosher menu that is identical to that used by the BOP.  ECF Nos. 19 ¶¶ 17-18 and 25-1 ¶ 16.  The effective date of the dietary change was five days before either Zeyer or Diaz were served in this case.  Injunctive relief forcing NEOCC to adopt an identical menu to BOP operated facilities could not compel NEOCC to do anything that the modified CCA-BOP contract has not already bound NEOCC to do.

 Plaintiff fears this decision was made to avoid judgment, and that the termination of the lawsuit would allow NEOCC to return to their "old ways."  ECF No 23 at 2.  Construed liberally,

(4:11CV00175)

this is an argument that the voluntary cessation exception to mootness applies here. Typically, discontinuing complained-of conduct does not moot a claim for injunctive relief. "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). Defendants arguing that a case is moot because of voluntary cessation carry a heavy burden of showing "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190, cited in *Ammex, Inc. v. Cox*, 351 F.3d 697, 705 (6th Cir. 2003). *See also United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.").

The Court finds that the voluntary cessation exception does not apply to the case at bar for two reasons. First, evidence does not suggest the change in NEOCC's Kosher RDP was made in response to impending litigation. Zeyer and Diaz were not served until July 6, 2011. ECF No. 7. This was five days after the new contract between the BOP and CCA, including the provision requiring all Kosher meals be served in individual sealed packages, went into effect. ECF Nos. 19 ¶¶ 17-18 and 25-1 ¶ 16. Furthermore, the change in the contract was made in June 2011. ECF No. 25-1 ¶ 16. Thus, the contract was potentially modified a month before defendants were served. It is also reasonable to infer that the change was contemplated prior to modification in June 2011, as negotiations concerning the terms of the new contract between CCA and the BOP must have taken place prior to the contract's modification. Given the fact that

6

(4:11CV00175)

the change in NEOCC's Kosher RDP was considered long before the defendants were served, it is reasonable to infer that the change in the RDP was not made because of Macedo's lawsuit. The requirement that cessation have occurred because of an impending lawsuit has support in at least one other circuit. *See, e.g.*, *Pub. Utilities Comm'n of State of Cal. v. F.E.R.C.*, 100 F.3d 1451, 1460 (9th Cir. 1996) ("Moreover, we have previously implied that, in order for this exception to apply, the defendant's voluntary cessation must have arisen because of the litigation.").

Second, defendants have met their burden of showing recurrence could not be reasonably expected. Plaintiff prays for an injunction out of fear that defendants will revert to serving non-Kosher food as they were allegedly doing before July 1, 2011. ECF No. 23 at 2. Assuming Plaintiff's fears were realized, CCA would have broken its contract with the BOP. Indeed, the June 2011 modification represents that, as a precondition to receiving compensation from the BOP for housing federal inmates, CCA must agree to serve the same Kosher meals that the BOP serves, which Plaintiff has not argued violate his religious beliefs. ECF No. 23 at 2. CCA has a financial interest in retaining business with the BOP. To that end, it can reasonably be expected that CCA will comply with the terms of their contract made effective July 1, 2011, including serving the same Kosher meals that the BOP serves at its facilities. As such, the presence of this contract is sufficient evidence that a recurrence of non-Kosher food being served to Plaintiff could not reasonably be expected.

The Court finds that it cannot provide the injunctive relief that Macedo desires because the complained-of activity has desisted. Furthermore, it is not reasonable to expect NEOCC to

7

(4:11CV00175)

return to its old methods of serving Kosher meals because the contract between the BOP and CCA requires NEOCC to administer its Kosher RDP in the same way the BOP does. Plaintiff's food claims are dismissed.

### B. Macedo's Juice Claim

The central thrust of Plaintiff's Complaint is that providing communal serving of grape juice for *Shabbat* services, as opposed to the individual serving that Plaintiff seeks, constitutes a violation of his ability to exercise his religious beliefs. In other words, Plaintiff has not been forced to abandon his religious practice but has been limited in his ability to practice it.

"To establish that this right [of free exercise] has been violated, a plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own 'scheme of things,' (2) his belief is sincerely held, and (3) defendant's behavior infringes upon this practice or belief." *Hernandez v. United States*, 4:11 CV 1737, 2011 WL 5971028 (N.D. Ohio Nov. 28, 2011) (Adams, J.) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir.2001)). While it is true that inmates retain their First Amendment right to exercise their religion while incarcerated, *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam), that right is subject to reasonable restriction by a correctional institute. *Bell v. Wolfish*, 441 U.S. 520, 549-51 (1979). *See also O'Lone v. Shabbazz*, 482 U.S. 342 (1987). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court in *Turner* described a number of factors that a court should balance when considering whether the limitation placed upon the inmate's exercise of a constitutional right is reasonable:

8

(4:11CV00175)

> First, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Second, the court must consider "whether there are alternative means of exercising the right that remain open to prison inmates." Third, the court should weigh the impact that the asserted constitutional right will have on the rights of prison guards and other inmates, as well as the allocation of prison resources. Fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation."

*Id.* at 89-90, quoted in *Hayes v. Tennessee*, 424 F. App'x 546, 549-50 (6th Cir. 2011) (internal citations omitted). Plaintiff faces the burden of "overcom[ing] the presumption that the prison officials acted within their 'broad discretion'" in enforcing the limitation. *Shaw v. Murphy*, 532 U.S. 223, 232 (2001) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)). A reviewing court may dismiss a plaintiff's claim when the balance of the four *Turner* factors weighs in favor of concluding the prison's proffered penological interest is reasonable. *See Flagner*, 241 F.3d at 487 ("Thus, looking at the totality of all four *Turner* factors, Flagner has presented sufficient evidence which raises serious questions concerning the validity of the defendants' asserted penological interests.").

Plaintiff has pleaded that a religious right has been violated by Zeyer's decision to provide a communal serving of grape juice rather than individual servings. Plaintiff's right to an individual serving of grape juice is a religious belief, not a personal one. The Complaint makes it clear that Plaintiff seeks injunctive relief for individual servings of grape juice so he may properly celebrate *Shabbat*. Furthermore, Plaintiff sincerely holds the belief that he is required to have an individual serving. The fact that Plaintiff has brought this lawsuit to enforce his right to an individual serving is evidence in itself that he sincerely holds this belief. Additionally, Zeyer has not contested the fact that Plaintiff sincerely holds the belief that he is required to have an

9

(4:11CV00175)

individual serving of grape juice. Finally, Plaintiff alleges, and Zeyer does not contest, that NEOCC's *Shabbat* services use a communal cup instead of individual servings. The decision to do so infringes upon Plaintiff's belief that he must have an individual serving of grape juice to celebrate *Shabbat*.

Plaintiff cannot show, however, that such a decision is not a reasonable decision. All four factors discussed in *Turner* weigh in favor of Zeyer's decision to use a communal cup. There is a valid, rational connection between the use of a communal cup instead of individual servings and the given reason for why Zeyer chose to do so. Individual servings would be cost-prohibitive, further straining a chaplaincy budget that needs to accommodate the religious practices of inmates of all faiths. Chaplain Zeyer affirms that, out of the 1,494 BOP inmates housed at NEOCC, only twenty-three identified as Jewish. ECF No. 25-1 ¶ 8. Despite the fact that this constitutes approximately 1.5% of the BOP population (ECF No. 25-1 ¶ 8), Zeyer testifies that almost half of the annual chaplaincy budget is spent on Jewish religious materials. ECF No. 25-1 ¶ 24. While Zeyer is unable to find a local supplier for individual serving Kosher grape juice (ECF No. 25-1 ¶ 19), he did locate an out-of-state supplier that would charge approximately 10% of the chaplaincy budget to supply individual servings. ECF No. 25-1 ¶ 25. This cost would need to be further offset by cuts to the budget that is allotted for other religions. ECF No. 25-1 ¶ 25. The decision to not pay the increased price for individual servings is rationally connected to

(4:11CV00175)

Zeyer's concern about providing sufficient funding for the more than 96% of NEOCC's BOP inmates that practice some religion other than Judiasm.[5] ECF No. 25-1 ¶ 24.

Macedo has alternative means for exercising the deprived right to an individual serving of grape juice during *Shabbat*. Indeed, the alternative means for Plaintiff to exercise his right is the system Zeyer and NEOCC have in place: instead of receiving a full serving, each Jewish inmate can have a sip from the communal cup. While Plaintiff may not be receiving the amount he desires, the accommodations that Zeyer and NEOCC have provided Plaintiff and other Jewish inmates constitutes a rabbinically acceptable alternative means for the Plaintiff to exercise his religious belief. ECF No. 25-1 ¶ 20.

Furthermore, the assertion of Plaintiff's right to an individual serving of Kosher grape juice would have adverse effects upon other inmates and prison resources. As discussed above, such a mandate for individual servings would put a financial strain upon the Chaplain's budget. This would have deleterious effects on the other faith groups incarcerated at NEOCC, whom already receive a disproportionately small share of the budget. Due to the estimated increased cost of providing individual servings of Kosher grape juice and the need to offset any increase by cutting the provision of other religious materials, it is reasonable to assume that other inmates' rights to religious exercise could be negatively impacted. Certainly the free exercise rights of other inmates are just as important as those of the rights of Plaintiff.

---

[5] Chaplain Zeyer indicates that twenty-nine BOP inmates declined to report any religious preference. ECF No. 25-1 ¶ 8. This would seem to account for the remaining 1.5%.

11

(4:11CV00175)

Finally, the absence of ready alternatives for Zeyer stands as evidence that Zeyer's decision to use a communal cup is reasonable. Plaintiff suggests that the BOP has previously provided him with 3.5 ounces of grape juice. ECF No. 23 at 5. The assertion that a different institution, operating with a different budget and under different financial constraints, was able to provide individual servings does not suggest that NEOCC's chaplaincy budget can also provide individual servings to each inmate. Indeed, the aforementioned evidence suggests just the opposite. Zeyer has not been able to find a local supplier of Kosher grape juice that would make ordering individual servings financially feasible. ECF No. 25-1 ¶ 19. An out-of-state supplier would be too expensive for the chaplaincy budget. ECF No. 25-1 ¶ 25. Given the financial constraints that Zeyer is operating under, there is an absence of alternatives to the communal cup and Zeyer is doing the best he can to accommodate a diverse religious population at NEOCC with limited financial resources at his disposal.

All four of the *Turner* factors weigh in favor of concluding that Zeyer's decision to use a communal cup for *Shabbat* services is a reasonable one. As such, dismissal of Macedo's claim is proper. *Cf. Henry v. Schriro*, 10 CIV. 7573 SAS, 2011 WL 3370394 (S.D.N.Y. Aug. 2, 2011) (dismissing a free exercise claim against prison where plaintiff's claim failed to show how denial of matzoh and grape juice was not a reasonable penological decision).

**C. Macedo's Traverse**

Macedo filed a document titled "Plaintiff's Traverse to the Defendant-Chaplain Zeyer's Reply to Response (Doc # 24)." ECF No. 27. Notwithstanding the name, Macedo has filed a sur-reply without leave from the Court. Macedo's Traverse thus was filed in violation of Fed. R.

(4:11CV00175)

Civ. P. 7 and Local Rule 7.1. The Court admonishes Plaintiff for failing to abide by the Federal and Local Rules. All parties, including those appearing *pro se*, must abide by the rules all the time, and if Plaintiff felt that filing a sur-reply was needed, he should have sought leave from the Court. In the interests of justice, however, the arguments raised therein were taken into consideration.

### IV. Conclusion

For the reasons stated above, the Court grants Defendant William Zeyer's Motion to Dismiss, Defendants Nilsa Diaz's Motion to Dismiss, denies *pro se* Plaintiff Gregorio Macedo's Motion for Summary Judgment, and denies Defendant Zeyer's Motion to Strike Plaintiff's Traverse. The claims against Zeyer and Diaz are dismissed with prejudice. The Court also observes that Defendant Heidi Mayer has not been served in this cause of action. The Court dismisses without prejudice Macedo's claim against Meyer. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[6]

IT IS SO ORDERED.

 July 31, 2012                                  */s/ Benita Y. Pearson*
Date                                            Benita Y. Pearson
                                                United States District Judge

---

[6] 28 U.S.C. § 1915(a)(3) provides: An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith.